HERGET, Judge.
Plaintiff, George C. Leggio, instituted this suit against defendants, A. B. Brous-sard, Jr., A. B. Broussard and Sons, Incorporated, a Louisiana corporation domiciled in the City of Baton Rouge, and Fireman’s Fund Insurance Company, the insurer of both named Defendants.
Plaintiff was employed by A. B. Brous-sard and Sons, Incorporated. In this suit he alleged, and the evidence substantiates such allegation, on Sunday, November 19, 1961, while Plaintiff was assisting A. B. Broussard, Jr. in starting a “Huber road grader” located on the estate of A. B. Broussard, Jr. he sustained serious, permanent, physical injuries for which Mr. Broussard, Jr. and his insurer are liable in tort; and in the alternative Plaintiff alleged the injury which incapacitated him was sustained during the course and scope of his employment with the corporation, making said corporation and its insurer liable therefor.
Plaintiff repaired to the estate of A. B. Broussard, Jr. at Broussard, Jr.’s request on the alleged date of injury to assist him in starting a road grader. To accomplish this purpose a pickup truck was attached to the grader, necessitating an operator for each, one vehicle to be operated by Mr. Broussard and the other by Mr. Leggio. Mr. Broussard, Jr. was driving the pickup truck and Plaintiff was steering and operating the road grader. The evidence reveals the blade of the road grader was in close proximity to the surface of the ground, which fact was noted and the operation in safety of the grader under such-conditions specifically questioned by Plaintiff ; whereupon, Mr. Broussard, Jr. lulled Plaintiff into a false sense of security by informing him that in pulling the grader with the pickup truck to start the motor of same he would proceed at a very slow speed, thereby eliminating the possibility of any accident ensuing. With full confidence Plaintiff boarded the road grader, Mr. Broussard, Jr. the pickup truck and proceeded to tow same. To start the grader it was necessary same be pulled onto a road bounding the Broussard property to provide a surface upon which the truck towing the motor grader could attain sufficient speed to-cause the engine of the motor grader to become started. Contrary to the expressed intention and plan of Mr. Broussard, Jr. to pull the grader at a low speed and with due caution, Mr. Broussard, Jr. increased the speed of the pickup truck to some-10-15 miles per hour, especially upon approaching an elevation to the highway from-the land, necessitating increased momentum. Tragically, the blade of the tractor dug into the ground at the point of eleva- *25 lion upon the entrance onto the highway and struck an imbedded pipe, in consequence of which Plaintiff was violently thrown forward and sustained the injuries for which recovery is sought.
From a judgment in favor of Plaintiff, •George C. Leggio, against defendants, A. B. Broussard, Jr. and Fireman’s Fund Insurance Company, jointly and in solido, in the sum of $30,915.08 together with interest thereon at the rate of 5% per annum from date of judicial demand until paid and fixing the fees of the experts, Doctors Campanella and Halley and Mr. Alvin Doyle, and taxing same as costs, and ordering Defendants to pay all costs of these proceedings, defendants, A. B. Broussard, Jr. and Fireman’s Fund Insurance Company, suspensively appealed. Plaintiff answered the appeal seeking an increase in the award.
The Trial Court found Mr. Brous-sard, Jr. was negligent in driving the pickup truck towing the grader at an excessive speed with the blade thereof in close proximity to the ground, to his knowledge, and despite his announced intention to proceed slowly; so that the accident in which Plaintiff was injured is attributable solely to Broussard, Jr.’s negligence. The evidence without question substantiates such finding .and, accordingly, the liability of defendant, A. B. Broussard, Jr. and his insurer, Fireman’s Fund Insurance Company, is evident.
The Court further rendered judgment rejecting the alternative demand of Plaintiff and dismissed his suit for workmen’s compensation benefits against A. B. Broussard and Sons, Inc. and its insurer, Fireman’s Fund Insurance Company.
Insofar as the alternative demand ■of Plaintiff for workmen’s compensation is concerned, the evidence reveals though Plaintiff was employed by A. B. Broussard and Sons, Incorporated, a private corporation, the injuries he sustained in this accident did not result from his work in connection with such corporation but resulted only from his assistance in aiding A. B. Brous-sard, Jr. in a private enterprise.
As to quantum, without question the evidence shows Plaintiff received severe and painful injuries. He first consulted Doctor Williams who diagnosed his injury as a bruised shoulder but, upon his failure to alleviate the pain and restore the action of the shoulder by the use of conservative treatment, Doctor Williams referred Plaintiff to Doctor Campanella who, likewise, initially treated Plaintiff with what may be categorized as conservative measures. However, on February 13, 1962 because of the fact such treatment was not effective and Plaintiff complained of continued pain, Doctor Campanella concluded surgery was indicated and, accordingly, operated on Plaintiff. This surgical procedure revealed Plaintiff had sustained a complete separation of the infraspinatus tendon which activates the shoulder. The tendon had been completely separated from the head of the humerus and the muscles had drawn up like a severed rubber band into the recesses of the shoulder. Doctor Campanella was of the opinion Plaintiff had sustained a severe injury which caused excruciating pain from the date of his injury until the performance of surgery on February 13, 1962. To repair the injury and reattach the tendon to the head of the humerus, Plaintiff was hospitalized for a period of eight days.
Unfortunately, both Doctor Campanella and Doctor Halley (an expert orthopedist called by Defendant to examine Plaintiff) were of the opinion the surgery performed had not been effective to the extent of enabling Plaintiff to use his right arm and shoulder as expected and, accordingly, he was and is 100% disabled inasmuch as he cannot elevate or lower his arm because there was some “play” in the attachment of the tendon to the humerus or to the musculature.
In his present state Plaintiff is unable to comb his hair without resting his right *26 elbow on his knee; he finds great difficulty-in using the shoulder and arm to dress and undress in shirt and coat; he is unable to tie a four-in-hand tie; and though fond of golfing, hunting, fishing and dancing, he is handicapped in the pursuit of such pleasures.
We were impressed with the sincerity of Plaintiff’s testimony. The operation as well as the condition prior thereto produced extensive pain. However, despite such fact, it is the considered opinion of the medical experts Plaintiff would substantially benefit by a second operation, though they are unable to, in good conscience, assure him such would correct his complaints.
We believe the Trial Judge to have given consideration to all of these factors in arriving at the quantum awarded Plaintiff and, though observing no adequate rule has yet been devised for the evaluation of pain and suffering and physical damage, we believe the award of the Trial Court to be warranted. Accordingly, the judgment is affirmed.
Affirmed.